# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| **BRENDA J. DISKEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:10-CV-00182** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Brenda Diskey appeals to the district court from a final decision of the

Commissioner of Social Security ("Commissioner") denying her application under the Social

Security Act (the "Act") for a period of disability and Disability Insurance Benefits ("DIB"), and

Supplemental Security Income ("SSI").[1] (*See* Docket # 1.)  For the following reasons, the

Commissioner's decision will be REVERSED, and the case REMANDED for further

proceedings in accordance with this Opinion and Order.

### I.  PROCEDURAL HISTORY

Diskey applied for DIB and SSI in July 2005, alleging that she became disabled as of

February 27, 2003. (Tr. 91-93, 96, 368-70.)  The Commissioner denied her application initially

and upon reconsideration, and Diskey requested an administrative hearing. (Tr. 57, 61-66, 71-

80.)  A hearing was conducted by Administrative Law Judge ("ALJ") Richard VerWiebe on

November 19, 2007, at which Diskey, who was represented by counsel, and a vocational expert

---

[1] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

("VE") testified. (Tr. 409-32.)  On February 29, 2008, the ALJ rendered an unfavorable decision to Diskey, concluding that she was not disabled because she could perform a significant number of jobs in the economy despite the limitations caused by her impairments. (Tr. 18-26.)  The Appeals Council denied her request for review, at which point the ALJ's decision became the final decision of the Commissioner. (Tr. 3-13.)  Diskey then filed a complaint with this Court on June 9, 2010, seeking relief from the Commissioner's final decision. (Docket # 1.)

## II.  FACTUAL BACKGROUND AND DISKEY'S ARGUMENTS

At the time of the ALJ's decision, Diskey was fifty-eight years old and thus considered to be of "advanced age" under the Social Security regulations. *See* 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4) (defining "advanced age" as age 55 or older).  She has a high school education and possesses past relevant work experience as a gift buyer for a bookstore and a manager of a bread company. (Tr. 97-98, 124-25, 187-88, 194-95.)  Diskey alleges that she became disabled as of February 27, 2003, due to morbid obesity, asthma, hypertension, osteoarthritis, fibromyalgia, left shoulder impingement syndrome, and major depression. (Opening Br. of Pl. in Social Security Appeal Pursuant to L.R. 7.3 ("Opening Br.") 2.)

Diskey does not dispute the ALJ's conclusion that she is limited to sedentary work due to her physical condition; rather, she challenges solely the ALJ's findings concerning her mental limitations and the transferability of her occupational skills. (Opening Br. 2 n.1.)  More specifically, she claims that the ALJ (1) erred at step five of his sequential analysis by failing to inquire and make a finding whether her skills were transferable to other work with "very little, if any, vocational adjustment", 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4); and (2) improperly concluded that she did not have a severe mental impairment. (Opening Br. 10-13.)

Because a remand is ultimately warranted based on Diskey's argument concerning the transferability of her occupational skills, the Court need not reach her argument about her mental limitations. As a result, a summary of the medical evidence of record is not necessary, and the Court will proceed to articulate the relevant standard of review.

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

# IV. ANALYSIS

### A. *The Law*

Under the Act, a claimant is entitled to DIB or SSI if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[2] *See* 20 C.F.R. §§ 404.1520, 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the

---

[2] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 404.1520(e), 416.920(e).

Commissioner. *Clifford*, 227 F.3d at 868.

*B. The ALJ's Decision*

On February 29, 2008, the ALJ rendered his decision. (Tr. 18-26.) He found at step one of the five-step analysis that Diskey had not engaged in substantial gainful activity since her alleged onset date. (Tr. 20.) At step two, the ALJ concluded that she has the following severe impairments: morbid obesity, asthma, hypertension, osteoarthritis, fibromyalgia, and left shoulder impingement syndrome. (Tr. 20.)

At step three, the ALJ determined that Diskey's impairment or combination of impairments were not severe enough to meet a listing. (Tr. 21.) Before proceeding to step four, the ALJ stated that Diskey had the RFC to perform the full range of sedentary work and that her testimony of debilitating limitations was not credible to the extent it was inconsistent with such RFC. (Tr. 21-23.)

Based on this RFC and the VE's testimony, the ALJ concluded at step four that Diskey was unable to perform any of her past relevant work, which was light in exertion. (Tr. 25.) The ALJ then concluded at step five that considering her age, education, work experience, and RFC, Diskey had acquired work skills from past relevant work that are transferable to other jobs existing in significant numbers in the economy, including order clerk and credit card clerk. (Tr. 26.) As a result, Diskey's claims for DIB and SSI were denied. (Tr. 26.)

*C. The ALJ's Step Five Finding Will Be Remanded*

Unless she is found to have transferable skills, Diskey, who is of "advanced age", a high school graduate, and limited to sedentary work, would be deemed "disabled" under the Social Security regulations. *See* 20 C.F.R. Pt. 404, Subpart P § 202.06. In this appeal, she contends that

the ALJ committed legal error at step five in assessing the transferability of her skills when he failed to inquire and make a finding concerning the degree of vocational adjustment required in the jobs identified by the VE. Diskey's argument ultimately has merit, warranting a remand of the Commissioner's final decision.

The transferability of skills "depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4). "Transferability is most probable and meaningful among jobs in which - - (i) [t]he same or a lesser degree of skills is required; (ii) [t]he same or similar tools and machines are used; and (iii) [t]he same or similar raw materials, products, processes, or services are involved." 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4). Ultimately "[t]here are degrees of transferability of skills ranging from very close similarities to remote and incidental similarities among jobs." 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4).

The requirements for the transferability of skills for persons of advanced age, however, who, like Diskey, are restricted to sedentary work, are more stringent. With respect to that population, 20 C.F.R. §§ 404.1568(d)(4) and 416.968(d)(4) provide that skills are transferable "only if the sedentary work is so similar to [the claimant's] previous work that [she] would need to make *very little, if any*, vocational adjustment in terms of tools, work processes, work settings, or the industry." (emphasis added).

Here, at the hearing, the VE testified that Diskey's past relevant work as a gift buyer at a bookstore would be classified as light work from an exertional standpoint and skilled. (Tr. 430.) The ALJ asked the VE whether any of Diskey's skills from her past job were transferable to a sedentary job, and the VE responded that some clerical skills, such as completing forms, and

skills associated with inventory were transferable. (Tr. 430.) The ALJ asked the VE if he could identify three specific jobs at the sedentary level that would "accommodate" Diskey's skills, and in response, the VE identified the jobs of an order clerk (250 jobs in the regional economy) and credit card clerk (125 jobs in the regional economy). (Tr. 430-31.)

What is missing from the VE's testimony, however, is any statement about the degree of vocational adjustment required for the jobs identified. This omission is then carried forward to the ALJ's decision, as he too fails to make any finding that Diskey "would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. §§ 404.1568(d)(4), 416.968(d)(4); *see* SSR 82-41.

The Commissioner concedes that the VE failed to state that Diskey could perform the new jobs with "little, if any, vocational adjustment" in accordance with 20 C.F.R. §§ 404.1568(d)(4) and 416.968(d)(4), but nonetheless argues that the VE's testimony was sufficient to make such a determination. (Resp. Br. 8.) The Commissioner then attempts *post hoc* to analyze the particular skills, tools, machines, processes, and services of Diskey's past job as a buyer and the jobs identified by the VE under the job descriptions set forth in O*NET, the online companion to the Dictionary of Occupational Titles, to evidence its assertion. (Resp. Br. 8-10.) Of course, "the ALJ (not the Commissioner's lawyers) must build an accurate and logical bridge from the evidence to [his] conclusion." *Steele v. Barnhart*, 290 F.3d 936, 943 n.16 (7th Cir. 2002).

In any event, with respect to the Commissioner's assertion that the VE's testimony was sufficient, it is not, perhaps, unreasonable to infer that the job identified by the VE would require "little, if any, vocational adjustment", considering that the ALJ told the VE at the start of his

testimony that he would be asked what jobs, if any, Diskey "is qualified to perform by virtue of her *age*, education, training, and experience." (emphasis added). The ALJ may seek the assistance of a VE when determining whether the skills acquired by a claimant are transferable. *See* SSR 82-41; *see, e.g.*, *Connour v. Massanari*, 173 F. Supp. 2d 785, 801 (N.D. Ill. 2001); *Huff v. Shalala*, No. 1:91CV499GR, 1994 WL 776889, at *3 (S.D. Miss. Sept. 30, 1994).

Nonetheless, it is troubling that the ALJ did not specifically question the VE about the effect that the claimant's age would have on the transferability of skills, considering that this issue is potentially dispositive of Diskey's application for DIB and SSI. A failure to question the VE or make a finding about the degree of vocational adjustment required with respect to the transferability of skills of an advanced age claimant has served as the basis for a remand by various courts. *See, e.g., Renner v. Heckler*, 786 F.2d 1421, 1424 (9th Cir. 1986) (remanding case where each of the jobs identified by the VE "appears to require some adjustment to new industries and work settings" but the VE failed to demonstrate that the claimant would be able to perform these jobs "with very little, if any, vocational adjustment"); *Harder v. Astrue*, No. 09-C-893, 2010 WL 2102618, at *1 (E.D. Wis. May 21, 2010) (remanding case and instructing the ALJ to identify the transferable work skills "and make a finding that little vocational adjustment is required"); *Lipke v. Astrue*, 575 F. Supp. 2d 970, 983 (W.D. Wis. 2007) (remanding case where no testimony was offered and no finding was made concerning the degree of vocational adjustment required, concluding that "this finding is mandated by the regulations"); *cf. Parker v. Astrue*, No. 1:07-CV-041-C, 2008 WL 793818, at *11 (N.D. Tex. Mar. 25, 2008) (finding harmless error where the ALJ did not make a specific finding in his decision that the claimant would require very little, if any, vocational adjustment, but the ALJ had specifically questioned

the VE at the hearing about the effect that claimant's age would have on the transferability of skills); *Huff*, 1994 WL 776889, at *3 (finding no reversible error where the ALJ did not make a specific finding that the claimant would require very little, if any, vocational adjustment, but the ALJ's course of questioning led to the VE's testimony that advanced age "significantly affects" an individual's ability to adapt to any other work situation).

Furthermore, there is an additional ambiguity in the ALJ's decision that raises cause for concern. The ALJ stated in his decision that he had asked the VE to identify occupations that could be performed by an individual of the same age, education, past relevant work experience, and RFC as Diskey, and which "require skills acquired in [her] past relevant work, *but no additional skills*." (Tr. 26 (emphasis added).) In actuality, however, the ALJ asked the VE to identify three specific jobs at the sedentary level that would "accommodate" Diskey's skills. (Tr. 430.) Perhaps this is mere semantics, but it is not unreasonable to infer that the jobs identified by the VE that would "accommodate" Diskey's transferable skills, could also incorporate some new skills. This discrepancy between the ALJ's question to the VE, which did not specify "no additional skills", and the ALJ's written finding, which includes that restriction, "creates ambiguity as to whether the ALJ sufficiently narrowed the assumptions he asked the [VE] to make. If excluding the acquisition of 'additional skills' was necessary to the ALJ's finding, he should have so instructed the [VE]." *Casillas v. Astrue*, No. CV 08-07441 AJW, 2010 WL 891277, at *4 (C.D. Cal. Mar. 10, 2010).

Moreover, while Social Security Ruling 82-41 suggests that *generally* clerical job skills have "universal applicability across industry lines" and can *usually* "be accomplished with very little, if any, vocational adjustment", the Commissioner does not cite this authority or even assert

this general premise in its response brief. To reiterate, the Commissioner, *not* the claimant, bears

the burden at step five to establish that a claimant's RFC allows her to engage in work found in

significant numbers in the economy. *See* 20 C.F.R. §§ 404.1520(g), 404.1566, 416.920(g),

416.966; *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)).

Therefore, since the issue of transferability of skills is potentially dispositive of Diskey's

claim, it is most prudent that the case be remanded to the Commissioner so that the ALJ may

inquire about and consider the degree of vocational adjustment required with respect to Diskey's

past relevant work and the jobs identified by the VE in accordance with 20 C.F.R. §§

404.1568(d)(4) and 416.968(d)(4).[3]

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the case

is REMANDED to the Commissioner for further proceedings in accordance with this Opinion.

The Clerk is directed to enter a judgment in favor of Diskey and against the Commissioner.

SO ORDERED.

Enter for this 11th day of February, 2011.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[3] Although, as explained *supra*, the Court need not reach Diskey's argument concerning her mental impairments, the ALJ is nevertheless encouraged upon remand to also recognize and resolve the conflict between the Global Assessment of Functioning ("GAF") score of 68 (indicating mild symptoms) assigned by Dr. Aldo Buonanno in 2005, and the GAF score of 50 (indicating serious symptoms) assigned by Dr. Fadia Aldahan in 2006. (Tr. 21, 216, 291); *see* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed., Text Rev. 2000).